JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Diamond General Contractors LLC

**(b)** County of Residence of First Listed Plaintiff: Mercer County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael T. Hollister, Esquire
3103 Hulmeville Road, Suite 200, Bensalem, PA 19020
215-244-4224

## DEFENDANTS
AlerisLife, Inc.

County of Residence of First Listed Defendant: Middlesex County, MA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
Other:
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28. U.S.C. § 1332(a)(1)

Brief description of cause:
Complete diversity of citizenship between Plaintiff and Defendant, amount in controversy exceeds $75,000.00.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE: 09/09/2026
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

**Rothberg Federman & Hollister, P.C.**
Michael T. Hollister, Esquire (Attorney ID: 007392003)
Joseph D. McCarthy, Esquire (Attorney ID: 442012024)
3103 Hulmeville Road, Suite 200
Bensalem, Pennsylvania 19020
215-244-4224
mhollister@rfh.law

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DIAMOND GENERAL CONTRACTORS LLC<br>3551 Mercerville-Quakerbridge Road<br>Hamilton, NJ 08081<br><br>*Plaintiff,*<br><br>v.<br><br>ALERISLIFE INC.<br>Two Newton Place<br>255 Washington Street<br>Suite 300<br>Newton, Massachusetts 02458-1634<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. _______________<br><br>Judge: _________________<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT

Plaintiff Diamond General Contractors LLC, by and through its undersigned counsel, brings this Complaint against Defendants AlerisLife Inc., and alleges as follows:

## NATURE OF THE ACTION

1. From in or about 2019 through in or about March 2022, Plaintiff Diamond General Contractors LLC ("DGC") performed renovation, repair, remediation, and improvement work at Leisure Park, a continuing care retirement community located at 1400 Route 70, Lakewood, New Jersey 08701 ("Leisure Park").

2. At all times relevant to this Complaint, Leisure Park was operated and managed by Five Star Senior Living Inc., which is now named AlerisLife Inc., a wholly owned subsidiary of Diversified Healthcare Trust and is the Defendant in this action.
3. The work at issue in this Complaint was requested by Five Star, authorized by Five Star, performed at Five Star's direction and with Five Star's knowledge, and invoiced to Five Star.
4. Five Star paid a number of DGC's invoices for that work without objection.
5. Five Star has refused to pay the balance.
6. DGC brings this action to recover $959,313.15 in authorized and unpaid invoices, together with interest, costs, and attorney's fees.
7. Separately from the work at issue here, DGC performed work at Leisure Park under four written contracts with FS Leisure Park Tenant Trust ("FS Leisure"), a non-party. Each of those contracts contains a mandatory arbitration provision. DGC asserts no claim in this action arising out of or relating to any of those four contracts. Those contracts are described below solely as background, and the damages sought in this action exclude every dollar invoiced thereunder.

## THE PARTIES

8. DGC is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 3551 Mercerville-Quakerbridge Road, Hamilton, New Jersey 08081.
9. Ahmed Chabboubi is the sole member of DGC.
10. Mr. Chabboubi is a citizen of the State of New Jersey, domiciled in Mercery County, New Jersey.

11. DGC is therefore a citizen of the State of New Jersey for purposes of 28 U.S.C. § 1332.
12. DGC is, and at all relevant times was, a contractor engaged in the business of commercial and residential construction, renovation, and repair.
13. Defendant AlerisLife Inc. ("AlerisLife") is a corporation organized and existing under the laws of the State of Maryland.
14. AlerisLife's principal place of business is Two Newtown Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458-1634.
15. AlerisLife is therefore a citizen of the State of Maryland and of the Commonwealth of Massachusetts for purposes of 28 U.S.C. § 1332.
16. At all times relevant to the events described in this Complaint, AlerisLife was named "Five Star Senior Living Inc."
17. On or about January 26, 2022, Five Star Senior Living Inc. announced its rebranding as "AlerisLife Inc.," and its common shares began trading under the ticker symbol "ALR" on or about January 27, 2022.
18. In March, 2023, ABP Acquisition LLC, a subsidiary of ABP Trust, acquired AlerisLife.
19. Alerislife remained as the surviving corporation.
20. This Complaint refers to the Defendant as "Five Star" throughout, without regard to the date of the name change or merger.
21. FS Leisure Park Tenant Trust ("FS Leisure") is, upon information and belief, an entity affiliated with and controlled by Five Star.
22. The four written contracts described below identify FS Leisure's address as 400 Centre Street, Newton, Massachusetts 02458.

23. Each of the four contracts were executed on behalf of FS Leisure by Stephen McCray, whose title is stated on the signature pages as "Vice President of Operational Finance & Acquisitions."

24. Upon information and belief, FS Leisure held the tenant or subtenant interest in Leisure Park, and the fee interest in the real property was held by an unaffiliated real estate investment trust and its subsidiaries.

25. FS Leisure is not a party to this action, and DGC asserts no claim against FS Leisure in this action.

**JURISDICTION AND VENUE**

26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

27. This Court has personal jurisdiction over Five Star because, at all relevant times, Five Star operated and managed a senior living community located in Lakewood, New Jersey, transacted business in New Jersey, contracted for services to be rendered in New Jersey, and purposefully availed itself of the privilege of conducting activities in New Jersey.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because the property that is the subject of the action is situated in this District.

29. Venue is also proper because N.J.S.A. 2A:30A-2(f) requires that a civil action brought to collect payments under the New Jersey Prompt Payment Act be conducted within the State of New Jersey.

## FACTUAL ALLEGATIONS

### A. Leisure Park and Five Star's Role

30. Leisure Park is a continuum of care retirement community located at 1400 Route 70, Lakewood, New Jersey 08701.

31. Leisure Park offers multiple levels of care on a single campus, permitting residents to move between levels of care — from independent living through assisted living, skilled nursing, and memory care — as their health needs change.

32. At all relevant times, Five Star operated and managed Leisure Park under the "Five Star Senior Living" brand.

33. At all relevant times, Five Star, acting through its on-site management personnel at Leisure Park and through its corporate personnel, directed and oversaw construction, renovation, repair, remediation, and maintenance work at Leisure Park.

34. Five Star determined what work would be performed at Leisure Park, when it would be performed, and by whom.

35. Five Star derived revenue from the residency, care, and services provided to residents occupying the units and using the facilities at Leisure Park.

36. Five Star therefore had a direct financial interest in maintaining the units and common areas at Leisure Park in habitable, safe, marketable, and revenue-generating condition.

### B. The Four Written Contracts (Background Only — Not At Issue in This Action)

37. Between on or about November 1, 2018 and on or about May 31, 2019, DGC entered into four written contracts with FS Leisure concerning work at Leisure Park (collectively, the "Written Contracts").

38. The Written Contracts are:

a. **Exterior Upgrades – Sidewalk and Curb Concrete Replacement**, effective on or about November 1, 2018, for the replacement of sidewalk and curb concrete;

b. **Exterior Upgrades – Lighting**, effective on or about November 1, 2018, for exterior and site lighting work;

c. **The Repair, Cleaning, and Painting of the Exterior of Leisure Park**, effective on or about November 1, 2018, for exterior repair, cleaning, and painting; and

d. **Replacement of HC & Bridges RTUs**, effective on or about May 31, 2019, for the replacement of rooftop HVAC units serving the health center and the "Bridges" (continuum of care) building.

39. Each of the Written Contracts was issued on FS Leisure's standard form, designated "FVE Form 6.26.15," and identifies FS Leisure as "OWNER" and DGC as "CONTRACTOR."

40. Each of the Written Contracts defines the work to be performed in an Exhibit A titled "Scope of Work / Work," and fixes the compensation payable in an Exhibit C titled "Contract Sum."

41. Section 5 of each of the Written Contracts provides that no change order or increase in the Contract Sum shall be performed without the prior written approval of FS Leisure, and that any change order work performed without such prior written authorization shall be deemed unauthorized and create no obligation on FS Leisure to pay for it.

42. Section 20 of each of the Written Contracts requires that any controversy or claim arising out of or relating to the Scope of Work, the Agreement, or the Project be submitted to arbitration under the Construction Arbitration Rules and Mediation Procedures of the American Arbitration Association.

43. Five Star is not a signatory to any of the Written Contracts.

44. Five Star undertook no payment obligation under any of the Written Contracts.

45. DGC asserts no claim in this action arising out of, relating to, or seeking any relief under any of the Written Contracts. Any claim DGC has under the Written Contracts is or will be pursued separately in arbitration in accordance with Section 20 of those contracts.

46. The Services described below are not within the Scope of Work of any of the Written Contracts.

47. The Services described below are not compensated by the Contract Sum of any of the Written Contracts.

48. The Services described below were not performed as change orders under Section 5 of any of the Written Contracts; no written change order was requested, issued, or executed with respect to any of the Services, and neither Five Star nor FS Leisure ever treated the Services as change order work under any Written Contract.

49. The damages sought in this action exclude every amount invoiced by DGC under the Written Contracts.

**C. The Additional Services**

50. Between on or about February 23, 2021 and on or about March 28, 2022, Five Star requested that DGC perform renovation, repair, remediation, and improvement work at Leisure Park that fell entirely outside the scope of the Written Contracts (the "Services").

51. The Services included, among other things:

    a. unit turnover work, including bathroom renovations, kitchen and cabinet installation, painting, flooring, and electrical work in individual resident units;

b. replacement of PTAC units, water heaters, and related mechanical and electrical work;

c. water intrusion, flood damage, and mold remediation and the associated reconstruction;

d. renovation and repair of common areas, hallways, elevator lobbies, vestibules, offices, the chapel, and service corridors;

e. exterior waterproofing and brick pointing; and

f. irrigation, and electrical system repairs.

52. A substantial portion of the Services responded to conditions that arose after the Written Contracts were executed, including water intrusion, mold growth, equipment failure, and resident turnover.

53. None of the Services duplicates any work within the Scope of Work of any Written Contract.

**D. <u>Five Star Requested and Authorized the Services</u>**

54. For each item of Services, DGC submitted to Five Star a written proposal identifying the unit or area involved, the scope of the work, and the price.

55. Five Star, acting through its agents authorized DGC to perform the Services described in each proposal.

56. The individuals who authorized the Services acted with actual authority, or in the alternative with apparent authority, on behalf of Five Star.

57. In the further alternative, if any individual who authorized the Services acted on behalf of FS Leisure or another entity affiliated with Five Star rather than on behalf of Five Star directly, that individual acted as the agent of Five Star, and Five Star subsequently

ratified the authorization by accepting the Services and by paying invoices for the Services.

58. Five Star directed the sequence, priority, and timing of the Services.

59. Five Star provided DGC with access to occupied and unoccupied resident units, common areas, mechanical and electrical rooms, and the roof of Leisure Park in order to perform the Services.

60. Five Star personnel observed and inspected the Services as they were performed.

61. At no time did Five Star direct DGC to stop performing the Services.

62. At no time did Five Star advise DGC that the Services were not wanted or not needed.

63. At no time did Five Star advise DGC that DGC would not be paid for the Services.

64. At no time did Five Star advise DGC that any Written Contract governed the Services or that any written change order was required before DGC performed the Services.

## E. DGC Performed the Services

65. DGC performed all of the Services.

66. DGC performed the Services in a good and workmanlike manner, in conformity with applicable laws, codes, and industry standards.

67. DGC supplied all labor, materials, equipment, and supervision necessary to perform the Services.

68. Five Star accepted the Services.

69. Five Star never rejected any of the Services.

70. Five Star never gave DGC notice of any defect or deficiency in the Services.

71. Five Star has enjoyed and continues to enjoy the benefit of the Services.

## F. Invoicing, Partial Payment, and the Outstanding Balance

72. Between on or about February 23, 2021 and on or about March, 2022 DGC issued approximately 275 invoices to Five Star for the Services, totaling $959,313.15.
73. Each invoice identified the unit or area involved, described the work performed, and stated the amount due.
74. Each invoice was addressed to Leisure Park, 1400 Route 70, Lakewood, New Jersey 08701, and was delivered to Five Star.
75. Each invoice stated payment terms of net thirty (30) days.
76. Five Star paid 25 of these invoices, in the total amount of $190,122.29.
77. Payment of those invoices was made by three checks drawn on an account of Five Star Senior Living, Inc., 400 Centre Street, Newton, MA 02458.
78. A schedule identifying the paid invoices by number, date, and amount is attached as Exhibit 1.
79. Five Star paid those invoices without objecting to the scope of the work, the quality of the work, or the amount charged.
80. Five Star never provided DGC with a written statement identifying any amount withheld from any invoice or the reason for any such withholding.
81. 275 invoices for the Services remain unpaid.
82. The authorized and unpaid invoices for the Services total $959,313.15.
83. A schedule identifying the unpaid invoices by number, date, and amount is attached as Exhibit 2.
84. None of the invoices identified in Exhibit 2 was issued under, or seeks payment for work within the Scope of Work of, any of the Written Contracts.

85. On or about April 11, 2025 DGC demanded payment of the outstanding balance from Five Star.

86. Five Star has not paid the outstanding balance.

87. Five Star currently owes DGC $959,313.15 for the Services that DGC performed.

**CLAIMS FOR RELIEF**
**COUNT I**
**BREACH OF CONTRACT**

88. DGC incorporates and re-alleges each of the foregoing paragraphs as if set forth at length herein.

89. Each written proposal that DGC submitted to Five Star for an item of Services constituted an offer.

90. Five Star's authorization of each such proposal constituted an acceptance of that offer.

91. Each proposal and acceptance formed a separate and enforceable agreement between DGC and Five Star (collectively, the "Service Agreements").

92. The material terms of each Service Agreement were the same: DGC would perform the scope of work described in the proposal, and Five Star would pay DGC the price stated in the proposal upon invoice, on net thirty (30) day terms.

93. Each Service Agreement was supported by valid consideration.

94. The Service Agreements are separate from, and independent of, the Written Contracts.

95. The Service Agreements were not made with FS Leisure, do not incorporate any term of any Written Contract, and are not subject to any arbitration provision.

96. DGC fully performed its obligations under each Service Agreement.

97. All conditions precedent to Five Star's obligation to pay have been satisfied, waived, or excused.

98. Five Star breached the Service Agreements by failing and refusing to pay DGC the amounts due for the Services.

99. In the alternative, if Five Star contends that some other entity was the contracting party on the Service Agreements, that entity acted as the agent of Five Star with actual or apparent authority, and Five Star is liable as principal and by reason of its ratification of the Service Agreements through its acceptance of the Services and its payment of invoices.

100. As a direct and proximate result of Five Star's breach, DGC has been damaged in the amount of $959,313.15, plus interest.

## COUNT II
## BOOK ACCOUNT / ACCOUNT STATED

101. DGC incorporates and re-alleges each of the foregoing paragraphs as if set forth at length herein.

102. DGC maintained a book account in the regular course of its business reflecting the Services rendered to Five Star and the amounts charged for them.

103. Entries were made in that book account contemporaneously with the performance of the Services.

104. DGC rendered statements of account to Five Star in the form of the invoices described above.

105. Five Star received and retained those statements without objection for an unreasonable period of time.

106. Five Star made payments on account, thereby acknowledging the account.

107. The balance due on the account is $959,313.15.

108. Five Star has failed and refused to pay that balance.

**COUNT III**
**UNJUST ENRICHMENT**
*(Pleaded in the Alternative)*

109. DGC incorporates and re-alleges each of the foregoing paragraphs as if set forth at length herein.

110. This Count is pleaded in the alternative to Count I pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3).

111. DGC conferred a benefit upon Five Star by performing the Services.

112. DGC performed all of the Services with the knowledge and consent of Five Star.

113. DGC did not perform the Services gratuitously and expected to be paid for them.

114. Five Star knew that DGC expected to be paid for the Services, as demonstrated by, among other things, Five Star's payment of a number of DGC's invoices for the Services.

115. The benefits conferred upon Five Star include habitable and rentable resident units, functioning building systems, the remediation of water intrusion and mold, restored and improved common areas, and the avoided cost of engaging another contractor to perform the same work.

116. Five Star has retained those benefits without objection and without notice of any defect.

117. Five Star has failed and refused to pay DGC the value of those benefits.

118. The value of the benefits conferred upon Five Star for which DGC has not been compensated is no less than $959,313.15.

119. Five Star has been unjustly enriched by receiving and retaining the benefit of the Services without paying for them.

120. It would be unjust and inequitable to permit Five Star to retain those benefits without making payment to DGC.

**COUNT IV**
**QUANTUM MERUIT**
*(Pleaded in the Alternative)*

121. DGC incorporates and re-alleges each of the foregoing paragraphs as if set forth at length herein.

122. This Count is pleaded in the alternative to Count I pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3).

123. DGC performed the Services in good faith.

124. At all times when the Services were being performed, Five Star was aware that DGC was performing them.

125. Five Star accepted, received, and enjoyed the Services.

126. Five Star expressed its acceptance of the Services by, among other demonstrations of intent, paying a number of DGC's invoices for the Services.

127. DGC had a reasonable expectation of being compensated for the Services.

128. The reasonable value of the Services for which DGC remains uncompensated is no less than $959,313.15.

129. Five Star has failed and refused to pay DGC the reasonable value of the Services.

**COUNT V**
**VIOLATION OF THE NEW JERSEY PROMPT PAYMENT ACT**
**N.J.S.A. 2A:30A-1 *et seq.***

130. DGC incorporates and re-alleges each of the foregoing paragraphs as if set forth at length herein.

131. The Services constituted the improvement of real property and of a structure located in the State of New Jersey.

132. Five Star is an "owner" within the meaning of N.J.S.A. 2A:30A-1 because Five Star had an interest in the real property to be improved and contracted with DGC for the improvements to be made.

133. In the alternative, Five Star is an "owner" within the meaning of N.J.S.A. 2A:30A-1 because Five Star acted as the agent of the party holding the interest in the real property to be improved.

134. DGC is a "prime contractor" within the meaning of N.J.S.A. 2A:30A-1 because DGC contracted with an owner to improve real property.

135. DGC performed the Services in accordance with the provisions of its agreements with Five Star.

136. DGC submitted billings to Five Star for the Services.

137. Five Star was required to pay each billing within thirty (30) days after the billing date.

138. Five Star failed to pay the billings identified in Exhibit 2 within thirty (30) days after the billing date.

139. Five Star did not provide DGC with a written statement of the amount withheld from any billing or the reason for withholding it.

140. Five Star was not engaged in a good faith effort to resolve the reason for the withholding.

141. Pursuant to N.J.S.A. 2A:30A-2(c), Five Star is liable for the amount owed, $959,313.15, plus interest at a rate equal to the prime rate plus one percent (1%) for the period beginning the day after each required payment date.

142. Pursuant to N.J.S.A. 2A:30A-2(f), DGC is entitled to an award of reasonable costs and attorney's fees as the prevailing party.

143. This action is being conducted inside the State of New Jersey as required by N.J.S.A. 2A:30A-2(f).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Diamond General Contractors LLC respectfully requests that this Court enter judgment in its favor and against Defendant AlerisLife Inc., and award the following relief:

a. Judgment in favor of DGC and against AlerisLife Inc. on each and every Count of this Complaint;

b. Compensatory damages in the amount of $959,313.15;

c. Interest at the prime rate plus one percent (1%) pursuant to N.J.S.A. 2A:30A-2(c);

d. Prejudgment and post-judgment interest as otherwise permitted by law;

e. Reasonable attorney's fees and costs pursuant to N.J.S.A. 2A:30A-2(f);

f. Costs of suit; and

g. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Diamond General Contractors LLC demands a trial by jury on all issues so triable.

Respectfully submitted,

**ROTHBERG, FEDERMAN & HOLLISTER, P.C.**

By:*/s/ Michael T. Hollister*

Michael T. Hollister, Esquire
Joseph D. McCarthy, Esquire
3103 Hulmeville Road, Suite 200
Bensalem, Pennsylvania 19020
215-244-4224
mhollister@rfh.law

*Attorneys for Plaintiff*
*Diamond General Contractors LLC*

Dated: September 9, 2026